IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

LORILLARD TOBACCO COMPANY,
PHILIP MORRIS USA, INC., R.J.
REYNOLDS TOBACCO COMPANY,
      Plaintiffs,

v.

CHESTER, WILLCOX & SAXBE, L.L.P.,
(individually and as defendant class
representative); PROVOST UMPHREY
LAW FIRM, L.L.P. AND PROVOST
UMPHREY TOBACCO (individually and
as defendant class representative); SIMON,
PERAGINE, SMITH & REDFEARN,
L.L.P. (individually and as defendant class
representative),
      Defendants.

Case No. 2:04-CV-715
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Mark R. Abel

## OPINION AND ORDER

This matter arises out of a Settlement Agreement entered into on December 21, 2004. Following settlement, a dispute has arisen regarding terms of the Agreement. The dispute before the Court is whether certain payments to various attorneys should be paid to Deutsche Bank. The Court also considers the Objections which have been filed on this issue as well as the Motion for Preliminary Injunction (Doc. #252) and Motion to Intervene (Doc. #258), which also derive from the same dispute.

Following approval of the Settlement Agreement in this case, five law firms in the State of Florida filed Objections to the Acknowledgment of the Settlement Agreement in this case. In particular, the Claimant[1] Law Office of W.C. Gentry, P.A., f/k/a Gentry, Phillips & Hodak, P.A.,

---

[1] The law firms refer to themselves as "Claimants" and/or "Florida counsel."

f/k/a Gentry and Phillips, P.A., filed an Objection to the Acknowledgment of the Settlement Agreement filed on its behalf by Assignee GP (FL) Funding II LLC (Doc. #215); Claimant Fonvielle Hinkle & Lewis, P.A. filed an Objection to the Acknowledgment of the Settlement Agreement filed on its behalf by Assignee FH (FL) Funding II LLC (Doc. #217); Claimant Brown, Terrell, Hogan, Ellis, McClamma & Yegelwel, P.A. filed an Objection to the Acknowledgment of the Settlement Agreement filed on its behalf by Assignee Bthemy (FL) Funding II LLC (Doc. #218); Claimant Nance, Cacciatore, Hamilton, Barger, Nance & Cacciatore, Partnership of Professional Associations, f/k/a Nance, Cacciatore, Sisserson, Duryea & Hamilton, P.A. filed an Objection to the Acknowledgment of the Settlement Agreement filed on its behalf by Assignee NCH (FL) Funding II LLC (Doc. #219); and Claimant Maher, Guiley & Maher, P.A., f/k/a Maher, Gibson & Guiley, P.A. filed an Objection to the Acknowledgment of the Settlement Agreement filed on its behalf by Assignee Maher (FL) Funding II LLC (Doc. #220).

For the reasons that follow, the Court considers the objections and overrules the same. The Court denies the Motion for Preliminary Injunction, also filed by Florida counsel. In addition, the Court denies the Motion filed by SunTrust Bank to Intervene and Interplead disputed monies to the registry of the Court (Doc. #258).

### I.

This interpleader action began on August 5, 2004 with the Plaintiff Tobacco companies' deposit of three bonds, totaling $66,236,352.00, which reflected a disputed amount as to Plaintiffs' payment of a Supplement to its quarterly payment of attorneys' fees in the fourth

2

quarter of calendar year 2004. Upon filing this action, the Court granted Plaintiffs' request for a provisional preliminary injunction pursuant to 28 U.S.C. § 2361.

On December 21, 2004, Plaintiffs filed an Amended Complaint which included a second dispute among all Private Counsel[2] as to whether Ellis Counsel[3] were entitled to recover, as part of Plaintiffs' payment of fees for the fourth quarter of calendar year 2004, the amount Ellis Counsel had been awarded in arbitration [ the "Missed Payments"]. Plaintiffs and Ellis Counsel also disputed whether Ellis Counsel were entitled to a payment of interest on the Missed Payments. (*Am. Complaint* at ¶ 43). Prior to the filing of Plaintiffs' Amended Complaint, the Court issued a Temporary Restraining Order, pursuant to 28 U.S.C. § 2361, enjoining "all interested persons or entities from initiating or prosecuting litigation in any State or United States Court relating to their respective entitlement, if any, to the attorneys' fees paid by Plaintiffs with respect to either the Supplement or Missed Payments. . . ." (Doc. #165). Plaintiffs were given leave to deposit funds in the amount of $79,310,761.00, reflecting the dispute as to the Missed Payments, on December 21, 2004. (Doc. #173).

The parties engaged in settlement negotiations as to the foregoing disputes and, on December 22, 2004, the Court granted Plaintiffs' request for Preliminary Certification of Classes and Preliminary Approval of Settlement. On January 5, 2005, Plaintiffs filed a Motion for

---

[2]Private Counsel are those who represented the various states in earlier litigation against the tobacco industry. "MTF Counsel" refers to those who represented the States of Mississippi, Texas and Florida and/or Janet Mangini, and "MSA Counsel," refers to those who were parties to the Master Settlement Agreement entered into in November 1998.

[3]Ellis Counsel includes all persons or entities that are a party to the Ellis Fee Payment Agreement, all persons and entities who were named as parties in the matter styled as *Application of Brown & Williamson Tobacco Corp., et al. v. Chesley, et al.*, Index No. 117050/01 (S.Ct. N.Y. Cty.), and their successors or heirs (the "Ellis Counsel Class").

3

Preliminary Approval of Amendment to the Settlement Agreement. The Court granted approval the same day. (Doc. #184).

On January 10, 2005, the Court held a Fairness Hearing on the Class Action Settlement. Following the hearing, the Court certified the instant action as a Class Action under Fed. R. Civ. P. 23(a) and (b)(1)(A), (B). The Court also concluded that the Settlement Agreement and Amendment thereto were fair, adequate and reasonable and the Court approved the same. (Doc. #190).

Following the Court's approval, the parties began filing Notices of Acknowledgment of Settlement Agreement and monies were disbursed pursuant to the terms of the Class Action Settlement. As stated above, certain Florida counsel have objected to Notices filed on their behalf with respect to the impact of the Settlement in this case on the Florida Fee Award.

The Court notes at the outset that it has jurisdiction over this dispute pursuant to ¶ 21 of the Settlement Agreement, which states:

> The Ohio Court [the United States District Court for the Southern District of Ohio] shall retain exclusive jurisdiction over any and all disputes relating to this Settlement Agreement, the enforcement of this Settlement Agreement and any monies to be allocated, advanced or recouped pursuant to this Settlement Agreement.

(Doc. #179).

## II.

The Claimants are part of a group of Florida counsel who are to receive the payment of attorneys' fees pursuant to terms of the Settlement of the Tobacco litigation brought in the 1990s. The fees are to be paid by the Plaintiff Tobacco companies over an extended period of time.

4

By way of background, in 1997 and 1998, Plaintiffs entered into three separate Settlement Agreements with the States of Mississippi, Texas and Florida ( the "MTF Agreements"). In November 1998, Plaintiffs entered into a Master Settlement Agreement with forty-six states to settle their respective tobacco lawsuits. As part of the Master Settlement Agreement ("MSA"), the tobacco industry and private counsel agreed to first attempt to negotiate an agreed upon fee ("Liquidated Fee"). The Tobacco industry earmarked $1.25 billion in this regard. The parties agreed to arbitrate the fee issue if an agreement could not be reached. (*Amended Complaint* at ¶ 19). In 1998 and 1999, the Plaintiffs in this case negotiated Liquidated Fees with MSA counsel for approximately twenty-one jurisdictions and the remainder were arbitrated to culminate in a Model Fee Payment Agreement ("MSA FPAs" or "Model FPA"). (*Id.* at ¶¶ 19-23). In total, there are twenty-three fee awards which total $14.254 billion. (*Id.* at ¶ 23).

The fee payment agreements entered into between Plaintiffs and the MTF counsel provided that the amount of attorneys' fees would be determined in arbitration. (*Id.* at ¶ 19). Arbitration commenced in New York, New York in late 1998. Three separate fee awards to MTF counsel followed in a total amount of $8.16 billion. (*Id.* at ¶ 20). The three separate fee awards (referred to as "MTF FPAs") "provide for quarterly payments in the amount of $125 million a quarter, including the fourth quarter of each calendar year, until all Fee Awards are satisfied." (*Am. Complaint* at ¶ 25). Similarly, the Model FPA for the MSA counsel and Ellis counsel caps the Plaintiffs' payment of fees at $125 million a quarter. These funds are then payable on a pro-rata basis towards the balance of the private counsel's Fee Award. (*Id.* at ¶¶ 26-27).

The Model FPA references a Supplement to Plaintiffs' quarterly fee payment in the fourth

quarter of calendar year 2004, which "ensures the distribution of the Unallocated Liquidated Fees[4] over a period of five years." (*Id.* at ¶ 28). This action was commenced to resolve the dispute which developed as to whether certain MTF counsel were entitled to share in the Supplement. MSA and Ellis counsel took the position that MTF counsel were not entitled to share in the Supplement. As noted *supra*, this disagreement, and another regarding Ellis counsel's arbitration award, were resolved and culminated in the Class Action Settlement Agreement entered in this action.

The current dispute pits the Claimants, Florida counsel, against Deutsche Bank. Following their agreement with the tobacco industry, certain counsel from the State of Florida opted to essentially sell their future payments for a lump sum amount. To accomplish this, the Claimants formed certain limited liability companies ("LLCs") and then sold their interests in fee payments to the LLCs which, in turn, issued and sold secured notes to investors. The proceeds from the sales of the notes were used to purchase the Claimants' interests in the fee payments on a discounted basis. The Claimants assigned certain rights in the fee payments to the LLCs which, in turn, pledged their interests to an Indenture Trustee, Deutsche Bank Trust Company of America ["Deutsche Bank"], as collateral to secure payment of the principal and interest on the notes. Simultaneously with the transfer of the law firms' interest to the LLCs, each law firm sold its interest in the LLCs to a subsidiary of Galway II LLC ("Galway"). The agreement between Galway and the LLC is contained in a document known as the "Florida Membership Interests Purchase Agreement," dated January 30, 2001. By this agreement, the law firms

---

[4]The Unallocated Liquidated Fees total $624.4 million of the $1.25 billion earmarked by the tobacco companies for Liquidated Fees. (*Am. Complaint* at ¶ 21).

relinquished their interests in fees received under the Florida Fee Payment Agreement.

In their respective Objections to the Notices of Acknowledgment of Settlement Agreement, Florida counsel argue that the Notices incorrectly indicate that one hundred percent (100 %) of all Interpleader Funds, including the Supplement, have been pledged by them to Deutsche Bank. According to Florida counsel, Deutsche Bank is entitled to receive 100 % of the payments Claimants are entitled to under the Florida Fee Payment Agreement[5] but Deutsche Bank is allegedly not entitled to payments due Claimants "as the result of the Settlement Agreement awarding Claimant[s] [their respective] proportionate share[s] of the disputed portion[s] of the Supplement and Future Supplements." (Doc. #215 at ¶ 3)[6].

Deutsche Bank contends that, as the Indentured Trustee, it is entitled to payment of the Supplement and Future Supplements "in the same manner as the other portions of the Fee Award." (Doc. #239 at 3). Deutsche Bank asserts that the Settlement Agreement in this case simply had the effect of accelerating payment of the Supplement and Future Supplement[7] to the Claimants. Accordingly, Deutsche Bank posits that there is no reason to treat these payments differently from other fee award payments due Claimants. Deutsche Bank contends that "[t]o do otherwise would impair the collateral for the Notes and violate the Noteholders' rights to security." (Id.). The LLCs take a similar position, arguing that the definition of the term "Fee

---

[5]In particular, the quarterly fee amounts plus the "Advanced Funds" paid by Plaintiffs as part of the second, third and fourth catch-up payments to Ellis counsel.

[6]Each of the objections raises this same issue.

[7]As stated above, the Supplement represents the increase in quarterly fee payments made by the Plaintiff tobacco companies in the fourth quarter of 2004. The Future Supplement represents the increase in quarterly fee payments to be paid in the fourth quarter of 2005 through 2008. (Settlement Agreement at 2).

7

Award" contained in the "Fee Award Purchase Agreement," entered into between the Claimant law firms and the LLCs, encompasses the payment of the Supplement and Future Supplement from the settlement in this case.

In response, Florida counsel contend that because the Supplement and Future Supplement payments derive from a dispute over the Master Settlement Agreement, these monies cannot be considered part of the "Fee Award" which Claimants transferred to the LLCs and which was later pledged to the Indenture Trustee, Deutsche Bank. In anticipation of the 2006 Supplement being paid, Florida counsel filed a request for Preliminary Injunction to prevent the money from being received by Deutsche Bank. For the reasons that follow, the Court declines to award such relief[8].

### III.

The issue is whether Deutsche Bank and the LLCs are entitled to receive the Supplement and Future Supplements as part of the earlier pledge of monies from Florida counsel. If the sums are part of the "Fee Award," as that term is used in the Fee Award Purchase Agreements under which Florida counsel conveyed their interests in the Florida Fee Award to the LLCs, then Deutsche Bank prevails; if such fees are not, the Claimants are entitled to relief.

The Court first looks to the specific definitions used in the documents between Florida counsel and the LLCs. The Fee Award Purchase Agreement defines "Fee Award" as follows:

> "Fee Award" shall mean the Participating Firm's right to receive from the Tobacco Companies under the Fee Payment Agreement the Participating Firm's allocable share of all amounts due to outside counsel from the Tobacco

---

[8] Since the Court resolves the dispute on the merits of the Objections raised by Florida counsel, the Court finds the request for Preliminary Injunction without merit. In addition, the Court does not address the propriety of a request for injunctive relief in a matter that is exclusively monetary in nature.

Companies under the Fee Payment Agreement.

(Fee Award Purchase Agreement). According to Deutsche Bank, the phrase "all amounts due" used in the definition of "Fee Award" necessarily includes the Supplement and Future Supplements.

As Florida counsel point out, however, the phrase "all amounts due" pertains specifically to the "Fee Payment Agreement." The "Fee Payment Agreement" is defined as follows:

> "Fee Payment Agreement" shall mean the Fee Payment Agreement, between the Tobacco Companies and outside counsel identified in **Annex A** hereto.

(*Id.*).

In turn, Annex A to the Fee Award Purchase Agreement identifies the "Fee Payment Agreement" as follows:

> Fee Payment Agreement: The Florida Fee Payment Agreement, dated September 11, 1998, by and among the Tobacco Companies, the State of Florida, and the Florida outside counsel, and the Agreement Concerning Fee Award to Florida Counsel dated as of January 29, 1999, by and among the Tobacco Companies and the Florida outside counsel.

(*Id.*, Annex A). Florida counsel contend that because the Supplement and Future Supplements derive from provisions of the MSA and not from the Florida Fee Payment Agreement, the monies are not part of the pledge to Deutsche Bank and the LLCs.

As Deutsche Bank and the LLCs aptly observe, the present position of Florida counsel is wholly contradictory to the position taken earlier in this lawsuit. As stated above, the instant action was commenced because of the dispute between MTF counsel and MSA counsel as to MTF counsel's entitlement to share in the Supplement and Future Supplements to be paid by the Plaintiff Tobacco companies. It is undisputed that the agreements between Tobacco and MTF counsel "do not expressly reference the Supplement or Future Supplements." (*Settlement*

*Agreement* at 2, Doc. #179). Nevertheless, MTF counsel argued that they were entitled to share in the monies. This dispute ultimately led to the Plaintiff Tobacco companies interpleader of the disputed sum in this Court. In support of their position, Florida counsel argued that the "Most Favored Nation" clause contained in the Florida Fee Payment Agreement anticipated that counsel for the State of Florida would obtain treatment at least as favorable as that of other counsel, *i.e.*, MSA counsel, in their settlement with the Tobacco companies. (*Answer and Counterclaim*, Doc. #77 at 21, ¶ 3). Florida counsel also asserted a counterclaim against Tobacco for breach of the Florida Fee Payment Agreement and the implied covenant of good faith and fair dealing under that same agreement "[t]o the extent the Court determines that only MSA counsel are entitled to share in the 'Supplement' . . . ." (Doc. #77 at 27). Now, Florida counsel literally have taken the opposite position, asserting that the Supplement and Future Supplements have no relation to the Florida Fee Payment Agreement and are entirely a product of the MSA. The stark contrast in the earlier position of Florida counsel with the present position is significant.

  This Court finds that Florida counsel's present position is equitably barred by the doctrine of judicial estoppel. In *New Hampshire v. Maine*, 532 U.S. 742 (2001), the Supreme Court stated that the doctrine of judicial estoppel "'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.'" *Id.* at 749, quoting *Pegram v. Herdrich*, 530 U.S. 211, 227 n.8 (2000). The doctrine serves to protect the integrity of the judicial process by "'prohibiting parties from deliberately changing positions according to the exigencies of the moment.'" *Id.* at 750, quoting *United States v. McCaskey*, 9 F.3d 368, 378 (5th Cir. 1993). The Supreme Court observed that there is no "general formulation of principle" for application of the doctrine but "several factors typically

10

inform the decision whether to apply the doctrine in a particular case." *Id.*

> First, a party's later position must be "clearly inconsistent" with its earlier position.... Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or the second court was misled...." A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped....
>
> In enumerating these factors, we do not establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel. Additional considerations may inform the doctrine's application in specific factual contexts.

*Id.* at 750-51 (internal citations omitted).

In *Teledyne Industries, Inc. v. National Labor Relations Board*, 911 F.2d 1214 (6th Cir. 1990), the Sixth Circuit held:

> Judicial estoppel is applied with caution to avoid impinging on the truth-seeking function of the court because the doctrine precludes a contradictory position without examining the truth of either statement.... For example, before the doctrine of judicial estoppel may be invoked, the prior argument must have been accepted by the court.... Although this limit allows parties to contradict themselves in court, it threatens only the integrity of the parties, not of the court.... Requiring prior judicial acceptance protects the truth-seeking function of the court while preserving the court's integrity.

*Id.* at 1218 (internal citations omitted).

With respect to the issue of judicial acceptance, the Sixth Circuit has made clear that acceptance does not mean that the party must have prevailed on the merits with respect to the position earlier taken. Rather, "'judicial acceptance means only that the first court has adopted the position urged by the party, either as a preliminary matter or as part of a final disposition.'" *Id.* at 1218, quoting *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 599 n.5 (6th Cir. 1982). In

11

*Teledyne*, the Sixth Circuit held that judicial acceptance was lacking because an earlier settlement, although in the form of an agreed order, "contain[ed] no admissions or findings of law or fact." *Id.* at 1219. As observed in an another Sixth Circuit case, "[w]hen an ordinary civil case is settled, there is no 'judicial acceptance' of anyone's position and thus there can be no judicial estoppel in a later proceeding." *Reynolds v. Commissioner of Internal Revenue*, 861 F.2d 469, 473 (6th Cir. 1988).

The Settlement Agreement in the instant action is not, however, the sort of ordinary settlement of a civil action that would preclude it from being judicially accepted. Unlike an ordinary civil settlement, the Settlement Agreement in this case required approval by the Court, pursuant to Fed. R. Civ. P. 23(e), as to its fairness, adequacy and reasonableness before it became effective. The rule provides:

> **(e) Settlement, Voluntary Dismissal, or Compromise.**
> (1)(A) The court must approve any settlement, voluntary dismissal, or compromise of the claims, issues, or defenses of a certified class.
> (B) The court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise.
> (C) The court may approve a settlement, voluntary dismissal, or compromise that would bind class members only after a hearing and on finding that the settlement, voluntary dismissal, or compromise is fair, reasonable and adequate.
> (2) The parties seeking approval of a settlement, voluntary dismissal, or compromise under Rule 23(e)(1) must file a statement identifying any agreement made in connection with the proposed settlement, voluntary dismissal, or compromise.

Fed. R. Civ. P. 23(e)(1), (2). In its *Opinion and Order* approving the Settlement Agreement, the Court stated:

> [T]he Court concludes that [the Settlement Agreement and Amendment are] fair, adequate and reasonable. It is clear that each class possesses legitimate arguments as to their respective positions. However, given the complexity and

12

> possible duration of the matter, the relief afforded by a settlement carries greater weight. The parties have worked expeditiously in furtherance of the Agreement and all counsel are highly qualified and experienced in their field. The Court respects the abilities of counsel and finds the Agreement to be a fair, adequate and reasonable resolution of the disputed issues. The Court notes that there are no objections to the Agreement.

(Doc. #190 at 11).

In the Court's view, the situation at bar is analogous to that in *Reynolds, supra*, where the Sixth Circuit held that a compromise reached in a bankruptcy proceeding and approved by the court as being fair and equitable satisfied the element of judicial acceptance. Thus, the Sixth Circuit concluded that a later change in position was barred by the doctrine of judicial estoppel. Similarly, in this case, the Court finds that to allow Florida counsel to change their original position to one diametrically opposed damages the integrity of this Court's function with respect to approval of the class action Settlement. The present position of Florida counsel is clearly inconsistent with their earlier position and, as a result, the Court concludes that the doctrine of judicial estoppel serves as a bar to counsel's current position.

In sum, the Court concludes that the Objections filed by Florida counsel are without merit and that the request for Preliminary Injunction is also without merit.

As a final matter, the Court addresses the motion of SunTrust Bank to Intervene and Interplead the disputed funds into the registry of the court. SunTrust Bank is the paying agent that receives funds from the Tobacco companies. SunTrust filed its motion to avoid any action against it by the Florida counsel or Deutsche Bank regarding payment of the Supplement and Future Supplements. Florida counsel do not oppose the motion to intervene and interplead funds. Deutsche Bank and the LLCs oppose intervention and interpleader.

In view of the Court's resolution of the dispute between Florida counsel and Deutsche Bank, the Court finds that intervention and interpleader of funds is not necessary. Thus, the motion by SunTrust Bank is denied.

### IV.

In light of the foregoing, the Objections filed by Florida counsel (**Doc. # 215, #217, #218, #219 and #220**) are **OVERRULED**. Florida counsel's request for Preliminary Injunction (**Doc. #252**) is **DENIED**. The Motion by SunTrust Bank to Intervene and Interplead funds (**Doc. #258**) is **DENIED**.

**IT IS SO ORDERED.**

4-5-2007
**DATE**

_____
**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**